THE FARMERS BANK OF MARYLAND *vs*. LEONARD MACKALL AND FRANCIS TILTON.—*December* 1845.

Upon a creditor's bill, for the payment of a mortgage and other debts, the lands of a deceased debtor, was decreed to be sold by a trustee appointed for that object. The trustee made and reported a sale. The funds raised in that mode being insufficient, a contribution was directed to be levied upon the devisees of the debtor, at their request, for the balances due certain specified creditors, which was done, and the accounts stated, both with the trustee and devisees, confirmed. After this, some of the devisees paid their contributions to the trustee, who wasted that part of the funds, and died insolvent. A second trustee was appointed, who collected the balance of the contributions. HELD:—

1st. That this last balance, was to be distributed rateably among the specified creditors in the contribution account.

2nd. That the first trustee had no authority, either under the original decree, or the ratified accounts, to receive the same.

3rd. That the claim of the complainant, who obtained the decree, was not affected by such payment to the trustee, although the trustee was his solicitor. Neither was that of a mortgagee, of the land decreed to be sold, though it included that belonging to the contributing devisees.

Equity will not sanction what was done without authority, though it would have ordered it to be done, where it endangers the interests of parties interested in the act.

The relation of a solicitor to the complainant in the cause, where the former is appointed a trustee, to make a sale by decree, becomes dormant when the decree is obtained. The solicitor, when he was appointed trustee, assumed a new character. Unauthorised receipts of money by the trustee, will not be sanctioned in virtue of any supposed relation of client and attorney.

An attorney, after judgment or decree, has power to collect the debt by execution.

APPEAL from the Court of Chancery.

On the 19th January 1824, *James McCormick*, by *John Scott, Esq.*, his solicitor, filed his bill in chancery against *Fayette Gibson; The Farmers Bank of Maryland; James Tilton and wife; Clara Tilton and others*, claiming to be a creditor of *Jacob Gibson*, deceased, and having a lien on his real property; the defendants being devisees and mortgagees of the deceased debtor.

On the 13th May 1836, the Chancellor, (BLAND,) decreed, that the real estate of *Jacob Gibson*, deceased, or so much thereof as may be necessary, be sold for the payment of the mortgage claim of the defendants, *The Farmers Bank of Maryland*, and the claim of the complainant, as stated in the bill, and all other debts due from the said deceased; that *John Scott* be appointed trustee, &c. Notice was ordered to be given to creditors, &c.

An appeal was taken from this decree, the result of which will be found stated in — *G. & J.*

After the cause was remanded, the trustee, on the 2nd April 1839, made a report of his sales, to amount of $15,637.36; and on the 5th June 1839, the sales were finally ratified.

After a variety of interlocutory proceedings, the auditor, on the 11th March 1841, reported an account A.—*Dr.*, *The Real Estate of Jacob Gibson, deceased, in account with John Scott, Trustee, Cr.*, in which the estate was charged :—

1. With costs, commissions, &c.,  -  - $1,718 21
2. With the mortgage of the *Farmers Bank*,  10,869 82

Carried forward,

Farmers Bank of Md. *vs.* Mackall and Tilton.—1845.

|  |  |  |
|---|---:|---:|
| Brought forward, - - | $12,588 | 03 |
| 3. With *Jas. Tilton's* life interest in his wife's equity, as sold, $\frac{3}{12}$ of $\frac{1}{4}$, - - | 584 | 30 |
| 4. With the complainant, for his proportion of *Mrs. Tilton's* equity, - - | 275 | 42 |
| 5. With the complainant's proportion of *Edward Gibson's* devise, - - - | 1,266 | 06 |
| 6. With the complainant's proportion of *Fayette Gibson's* devise, sold to *Lloyd*, - | 379 | 79 |
| 7. With the complainant, for the balance of *Mrs. Tilton's* equity, - - - | 525 | 76 |
| The amount of sales reported, | $15,619 | 36 |

The auditor also stated an account B, in which the real estate of *Jacob Gibson* was debited :—

|  |  |  |
|---|---:|---:|
| 1. To the *Farmers Bank of Md.*, - - | $1,084 | 52 |
| 2. To *James McCormick*, the complainant, | 981 | 72 |
| 3. To *Mrs. Tilton*, - - - - | 997 | 83 |
|  | $3,064 | 07 |

And credited as follows :—

|  |  |  |
|---|---:|---:|
| By this sum, due from *Reynolds and wife*, | $2,230 | 60 |
| By this sum, due from *Mrs. Bennett's* heirs, | 533 | 47 |
| By this sum, due by *Lloyd*, for costs, | 120 | 77 |
| By this sum, due by *Blake's* heirs, for costs, | 179 | 23 |
|  | $3,064 | 07 |

On the 29th April 1841, the Chancellor confirmed both these accounts, and directed the trustee to apply the proceeds accordingly, with a due proportion of interest, that has been or may be received.

On the 29th September 1841, *Leonard Mackall* had leave to appear in the cause, as administrator of *James Tilton*, deceased.

On the 14th April 1842, *Frances Tilton*, one of the defendants in this cause, filed her petition, alleging, that since the decree passed herein, a considerable part of the real estate of

her father, the late *Jacob Gibson,* has been sold by the trustee, for that purpose appointed; and amongst other property, that part devised to *Fayette Gibson,* that devised to *Edward R. Gibson,* and that devised to your petitioner; that after said sales were made, the auditor of this court, by his reports, dated on the 8th and 11th March 1841, distributed the proceeds of sale amongst the parties properly entitled, as will particularly appear by his accounts, marked A and B, accompanying his said report; that by those accounts, which were finally ratified and confirmed by your honor, the whole of your petitioner's equity of redemption, was applied to the payment of the claim of the then complainant, *James McCormick,* after deducting the life estate of your petitioner's then husband, since deceased, and her right was recognised to be substituted for the said *McCormick,* to the extent of such application of her equity of redemption, over and above the share or portion of said debt, which her property would be eventually bound to pay, or would have been bound for, if all the real estate of the said *Gibson* had been sold, and the proceeds thereof brought into court for a proper distribution. Your petioner further shows, that by account B, accompanying said report of the auditor, and which was confirmed, as aforesaid, the several sums to be paid by the other parties to this cause, or for which the estate of *Jacob Gibson,* in their hands, was answerable, was fixed and ascertained in the following manner, viz: that devised to *Anne Reynolds,* was ordered to pay $2230.60; that devised to *Harriet Bennett,* was ordered to pay $533.47; that part devised to *Fayette Gibson,* and sold to *Edward Lloyd,* was ordered to pay $120.77; that part devised to *Fayette Gibson,* and sold by him to *John W. Blake,* was ordered to pay $179.23; making in all the sum of $3064.07; for which the said estate of the said *Gibson* was still responsible, after the application of the proceeds of the sales, at that time effected by the trustee; that by the same, the said sum of $3064.07, was to be applied as follows, namely, to the payment of the remainder of the complainant's claim, the sum of $981.72; to the payment of the remainder of the mortgage debt of the *Farmers Bank of Maryland,* the sum of $1084.52; and to your petitioner, by substitution, the sum of

$997.83. That after the order passed by your honor, on the 29th April 1841, confirming the auditor's said accounts, A and B, it became the duty of the trustee, forthwith to sell such part of the real estate of the said *Jacob Gibson*, as was in the possession of the several parties, answerable, as devisees, for the several sums of money to be distributed, as per account B, unless they severally paid the sum assessed thereupon; but this he has neglected to do, and in consequence thereof, your petitioner has been deprived of her just portion of said sum of money, after her estate had been sold and consumed in the payment of debts, for which the other devisees, and their assignees, were justly responsible.

Your petitioner further shows, that when she last applied to the said trustee, he alleged as a reason why he could not proceed, that the complainant, *James McCormick*, had departed this life, which your petitioner now avers to be the fact, and whose death she now, therefore, suggests; and she further alleges, that since his death, *John McCormick* had taken out letters of administration upon his estate, as will appear, and whom she prays may, by proper proceedings, be made a party to this cause, in lieu and stead of the said *James McCormick*, and that the said suit may stand revived. Your petitioner further suggests, that since the ratification of the said accounts, A and B, *Edward R. Gibson*, one of the defendants, and a devisee of the said *Jacob Gibson*, has also departed this life, leaving the following children and heirs at law, namely, *Rebecca*, who has intermarried with one *Jacob Smallwood, Jacob Napoleon, Hanson, Emily Eugene,* and *Janette Gibson,* all of whom reside out of the State of *Maryland;* but your petitioner submits, that it appears from the proceedings in this cause, and particularly from the deed from the said *Edward R. Gibson* to the defendant, *Fayette Gibson,* filed on the 19th January 1834, marked LG, No. 6, and returned with a commission on the 5th April 1834, from the deed from *Fayette Gibson* to *Edward R. Gibson,* returned with a commission, and filed on the 5th April 1834, marked LG, No. 7, from the decree passed on the 8th November 1826, taking the bill as confessed against the said *Edward R. Gibson,* and from said accounts A and

B, wherein the proceeds of the devise to *Edward R. Gibson,* have been applied under an order of this court; that the interest of the said *Edward R. Gibson,* and his heirs, are merely nominal, and she therefore prays, that the said trustee may be ordered and required to proceed in the execution of his trust; and the said *John McCormick,* as administrator of the said complainant, *James McCormick,* may be made a party to these proceedings, in lieu of the said *James;* and your petitioner further prays, that the said trustee may be ordered to report what sums of money he has received from the purchasers, at the several sales made by him, and what he has received from any of the parties in this cause, &c.

On the 15th April 1842, the Chancellor ordered that the suit be revived against *John McCormick,* administrator of *James McCormick,* provided a copy, &c.; and that upon the said *John* becoming a party to these proceedings, the trustee forthwith proceed to close his trust, and report to this court as prayed; provided, also, a copy, &c.

*John McCormick,* by his answer, after a reference to the petition, which he admitted to be true, suggested for the consideration of the Chancellor, "whether the petition of the said *Frances Tilton,* is according to the rules and practice of this honorable court, and whether the proceeding by a bill of revivor and supplement, to which he hath referred, is not the proper course and remedy to be used and adopted in such cases; that he has heard, and believes it to be true, that *Edward R. Gibson,* one of the original defendants in the said cause, and a devisee of the said *Jacob Gibson,* hath departed this life, leaving children and heirs at law, as hath been stated, and that they reside out of the State of *Maryland;* and submits to the consideration of the Chancellor, whether it is necessary that they should be made defendants to the proceedings, now about to be had in the said cause in this honorable court, &c.

*John Scott,* Sol. for Def't.      JOHN P. McCORMICK."

On the 21st May 1842, the Chancellor directed, that the order of the 15th April, be made absolute, without prejudice to the said *John P. McCormick's* bill of revivor and supplement, that the cause stand revived, and that the trustee forthwith report, and proceed as directed by the order of the 15th April last.

On the 19th October following, the trustee being in default, he was removed, and afterwards, *Henry C. Mackall* appointed in his place.

On the 9th June 1843, the second trustee reported, that there remained due the sum of $518.38, which he had received from *Wright*, one of the purchasers under the decree.

That the heirs of *Bennett*, upon whom, by the auditor's report of 8th March 1831, was levied, as their portion of the general fund, the sum of $533.47, paid on the 27th March 1839, the sum of $1000 to the former trustee.

That the sum of $120.77, levied upon *Lloyd*, for costs, had been also paid to the former trustee.

That of the sum of $2230.60, levied upon *Joseph Reynolds and wife*, there had been paid to the former trustee, on 27th March 1839, the sum of $1423.50, leaving a balance then due of $806.02, which last mentioned sum with interest, $1064.16 has been received by the present trustee from the executors of *Reynolds*.

That the sum of $216.34, principal and interest, levied upon *Blake*, had been received from the sales of his estate by the present trustee, and that the said sums are now in hand, &c. The Chancellor ordered them to be deposited in court, which was done.

On the 18th December 1843, *The Farmers Bank of Maryland* filed their petition, and alleged, among other matters, that by the auditor's accounts ratified, there had been assigned to them out of the proceeds of the sales of the real estate, in part payment of their claim, - - - $10,869 82

Of which they have received, by a set-off of their purchase, - - $10,500

Reduced by their payment to the trustee, *J. S.*, - - - - - 500    10,000 00

Leaving due to them of the proceeds of sales on this account, - - - - - 869 82

And on account of their costs of suit, - - - 68 60

And on account of the sum assigned them, to be paid by the parties, as per account B, - - 1084 52

Making an aggregate due the bank, - - $2022 94

after paying off the purchase money aforesaid; that *John Scott*, from time to time, promised to execute a deed to them for their purchase, but neglected so to do; that afterwards, *H. C. M.* was appointed trustee, to complete said trust, who hath accepted the same, but he declines setting off the bank's purchase against so much of their claim, and executing a conveyance therefor, without the authority of this court. That said *H. C. M.*, as trustee, did, on the 9th June last, deposite in court to the credit of this cause, $1498.42, as will appear, &c. They pray, that a check for the said sum, to be paid to their solicitor, and that *H. C. M.* may make said set-off and conveyance, &c.

On this petition, the Chancellor, on the 18th December 1843, referred the cause to the auditor, with directions to distribute the money now in court, in due proportion, assuming the validity of the claims, as heretofore affirmed by the orders ratifying the accounts heretofore stated.

A receipt of *John Scott*, trustee, was filed in the cause, dated 1st March 1839, for $1000, received from *Dr. L. Mackall*, who intermarried with *Frances Ann Bennett*, one of the children of *Harriet*, daughter of *Jacob Gibson*, and devisee under his will, to be accounted for by him, as trustee, for the sale of *J. G's* estate for the payment of his debts, and to be applied under the directions of the Chancellor.

On the 10th April 1844, the auditor reported three accounts, C, D and E.

In account C, which was between the estate of *J. G.*, and *John Scott*, trustee, the former was credited with the whole amount of sales, $15,210.24. Amount paid by *Dr. L. Mackall*, less commissions, $942; the sum paid by *Reynolds*, $1423.50, and that by *Lloyd's* heirs to him, $120.77, in all, $17,696.51; and debited with the debts of the bank, *James Tilton* and *James McCormick*, which nearly paid them in full.

Account D was stated between the same estate, and *H. C. M.*, trustee, and credited the estate with the sums received from *Wright*, *Reynolds*, and the heirs of *Blake*, $1798.88, and debited, with costs, the small balances due the claimants in account C; the balance, $1439.06, as follows, to *L. Mackall*,

$418.03; to *Mrs. Tilton,* $1021.03, for amount assigned her in account B.

Account E, between the same as account D, credited with same amount, and debited with costs, $351.22; also a dividend on $1954.34 to *Farmers Bank,* $511.23. *James Tilton,* a dividend on $133.11, $34.82; and *James McCormick,* for account of his claim in A and B, $3446.75, with a dividend of $901.61.

The parties respectively excepted to these accounts; the bank and *McCormick* claimed the fund, as adjusted in the account E, which was for the balance due them, after allowances for payments to them by the first trustee. The other parties claimed, as per account D.

On the 25th July 1844, the Chancellor, (BLAND,) ratified account D, and directed the funds to be paid accordingly, and the *Farmers Bank of Maryland* appealed to this court.

The cause was argued before ARCHER, C. J., DORSEY, CHAMBERS, SPENCE and MARTIN, J.

By RANDALL for the appellant, and
By McLEAN and WORTHINGTON for the appellees.

ARCHER, C. J., delivered the opinion of this court.

The order of the Chancellor, appealed from, could only be sustained on the assumption, that the former trustee rightfully, as trustee, received the various amounts required by account B, to be contributed by the devisees of *Jacob Gibson.*

If these sums were rightfully received by the trustee, to the extent of the bank's proportion of such payment, the claim of the bank must be considered as extinguished.

But the decree, under which the trustee acted, created no responsibility on the trustee, in relation to these contributions. It did not make it his duty to receive them, and we do not think, that any order passed in the case, has created such responsibility; such a consequence cannot be ascribed to the Chancellor's order, of 15th April 1842, on *Tilton's* petition, which requires the trustee to report the sums received from the sales

of the land, and from the parties to the suit. The Chancellor, when the trustee should have made his report, was left to pursue such course, in confirming or rejecting what the trustee had done, after the report should have come in, as, in his judgment, might have in the most proper manner dispensed justice between the parties, untrammelled by his order above referred to.

What would be the consequence of the trustee's refusal or neglect to report, in pursuance of the order of the Chancellor, it is unnessary to state, further than to say, that such disobedience did not create a liability on the part of the trustee, under his bond, for the amount of the above referred to contributions, which had been paid to the trustee, without authority from the Chancellor to receive them; and which, in the then state of the cause, should have been paid by the contributors, into the Court of chancery, by authority of that court.

Nor, in our opinion, does the order of the Chancellor of the 14th April 1841, whereby he confirmed accounts A and B, in any manner sanction the receipt, by the trustee's, of these contributions. The order, so far as it directs the trustee to pay over the proceeds accordingly, must be considered as having reference to the proceeds of sale, acknowledged by the trustee in his report to have been received. Account B, which is confirmed, is not an account of the real estate of *Jacob Gibson* with the trustee, but an account with sundry persons, who, choosing to be contributors, might exempt their lands from sale under the decree; and the credit side of this account shows, that the fact of any previous payment having been made, was not disclosed to the Chancellor; on the contrary, the sums placed to the credit of that account, are stated to be *due* from the persons therein. Besides, no commissions are allowed in account B, which is fair to infer, would have been allowed, if this order had meant to sanction the receipt, by the trustee, of these contributions; and looking to these facts, it is quite impossible to consider the confirmation of these accounts as conferring any authority on the trustee, to have received these contributions. If it had been deemed important to have paid these contributions, an order should have been obtained, autho-

rising the trustee to have received them; or they might have been paid, with the sanction of the Chancellor, into court. As no such order was applied for, the receipt of these contributions by the trustee, was wholly without authority, and can in no manner affect the persons in this cause, to whom, if rightfully paid, they would have been due.

Had the money remained in the hands of the trustee, and so appeared by his report, the Court of chancery would, doubtlessly, have sanctioned such payments, and distributed them according to the equities of the respective parties; but if it be true, as suggested, that the amounts thus received by the trustee, have been by him wasted, we cannot conceive that equity, by sanctioning what was done without authority, would endanger the interests of the parties having claims on such contributions.

We do not mean to intimate by any thing we have said, that if the Chancellor had sanctioned, as contended, by his order the receipt of the funds, after the same had been wasted, that such order would have been conclusive on the parties.

The sum now in court for distribution, is made up of the balance due on the sale of *Marengo*, and of contributions made by sundry persons, whose names are mentioned on the credit side of account B. The proceeds of sale, and of these contributions, were rightfully appropriated by accounts A and B: which have been ratified. Exceptions thereto having been overruled, and the fund in hand must be applied, (as what has heretofore been received of the purchase money, may have been wasted, or in danger,) to all the creditors and others, in accounts A and B, to whom such money was awarded, in due proportion, having regard to the respective amounts due to said claimants, as appear by the above referred to accounts.

So far as the fund for distribution, consists of the purchase money for the lands sold by the former trustee, that must be distributed among the persons in account A, to whom the purchase money was distributed; and so far as the same consists of money paid to the trustee by the contributors, that must be distributed among the persons, to whom, by the account B, the contributions were assigned; and the said distributions are to be

made by the rule just designated.   If the entire funds have not been wasted, but the trustee has made payments, to some extent, to the claimants, then, in making distribution of the fund in court, such sum as shall be found to have been paid, shall be taken into account; and in such case, such claimant shall be excluded, if it be found, that he has received more than he would have received, if all the funds had been wasted and the fund was distributed; as in such case, has been above directed.

There is nothing, in our judgment, which should prevent *McCormick* from obtaining his due proportion of the funds in the hands of the trustee.   He had sought redress, in a court of equity, for the recovery of his claim, and the former trustee was his solicitor—but the relations between him and his solicitor, so far as is disclosed by any evidence on the record, became dormant when the decree was obtained; and the solicitor, when he was appointed trustee, assumed a new character, and incurred the responsibilities attendant upon such newly assumed character.   *McCormick* was, certainly, not afterwards bound by any act which he might do, or omit to do, either as a trustee or an individual; and might seek redress for any violation of his duty as trustee, on his bond, or against him, individually, for any act of wrong he may have committed without the scope of the bond; and we cannot perceive that he is to be treated as assenting to any unauthorised receipt of money by the trustee, in virtue of any supposed relation of client and attorney.   It is not meant to be intimated, that an attorney, after judgment or decree, has no power by execution to collect the debt; but after decree, if the attorney becomes a trustee, and either, as trustee, receives the money, or it is paid to him, in that character, and received by him, as was done in this case, under color of his office as trustee, such payment to the trustee, is not a payment to the complainant.   It has been suggested, that *John Scott*, as solicitor for *McCormick*, filed his answer to *Tilton's* petition, but this was long after the unauthorised receipt by the trustee: the answer having been filed on the 19th May 1842, and the money received by the trustee in March 1839.

By the account, which has been confirmed by the Chancellor, and which is appealed from in this case, after paying the costs and expenses of the present trustee, the money received by the present trustee is applied, to make good to the contributors over-payments made by them; while the creditors, and others, are made to *lose*, by the admitted defalcations of the former trustee. We cannot perceive any principle of equity, which would, under such circumstances, place one creditor on higher ground than another; nor can we conceive why he, who without authority has over-paid his contribution, should, for reimbursement, obtain compensation from what has been saved, while the creditors, whose claims had been allowed, and properly allowed, are thrown upon the possible chance of recovering their claims from a trustee's estate, which is admitted to be insolvent.

The order of the Chancellor appealed from, is reversed, and the cause remanded to the Court of chancery.

ORDER REVERSED AND CAUSE REMANDED.